FILED
LODGED          ENT
RE:

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

AUG – / 2008

AT G.
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____
DEPUTY

| | | |
|---|---|---|
| **CRAIG WEBSTER** | * | |
| | * | |
| **Petitioner** | * | |
| | * | |
| **v.** | * | **Criminal No. PJM 04-269** |
| | * | |
| **UNITED STATES OF AMERICA** | * | **Civil No. PJM 05-255** |
| | * | |
| **Respondent** | * | |
| | * | |

## MEMORANDUM OPINION

Craig Webster pled guilty to possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841 and was sentenced to 262 months of incarceration, followed by five years of supervised release. He has filed a *pro se* Motion to Vacate, Set Aside, or Correct His Sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel because of his counsel's alleged failure to investigate and dispute the drug type involved, unlawful inducement of Webster's guilty plea, and failure to object to Weebster's classification as a career offender.

Webster has also filed a Motion for Default Judgment alleging that the Government's failure to timely respond to his § 2255 petition warrants default judgment in his favor.

Having considered Webster's Motions and the Government's Response, the Court **DENIES** both Motions.

### I.

Webster was represented by Assistant US Public Defender Pete Johnson, Esquire, during his initial appearance, arraignment and sentencing. During Webster's plea hearing, John Chamble, Branch Chief for the Office of the Federal Public Defender in Greenbelt, assumed the

-1-

role of counsel. Prior to the guilty plea hearing, Chamble met with Webster to discuss the written agreement that had been offered by the Government. During the meeting, as orally confirmed by Webster during the plea hearing, Chamble reviewed the terms of the agreement with him. At sentencing, Webster, through Attorney Johnson, objected to the consideration of his February 2000 Maryland conviction for second degree assault as a predicate "crime of violence." The Court, however, rejected this position, citing Fourth Circuit law. *See United States v. Simms*, 441 F.3d 313 (4th Cir. 2006); *U.S. v. Webster*, 201 Fed. Appx. 946, 947 (4th Cir. 2006) As a result, Webster's final offense level was set at 34, and his criminal history category was VI. The resulting custody range was 262 to 327 months. Webster was sentenced to 262 months of imprisonment followed by five years of supervised release.

Webster filed a notice of appeal to the Fourth Circuit, alleging that this Court had erred in determining him to be a career offender. In an unpublished opinion, the Fourth Circuit dismissed the appeal, noting not only that Webster had waived his right to appeal in his plea agreement, but that he had also conceded that the Fourth Circuit had rejected the same arguments regarding his career offender status.

## II.

Webster contends that Attorney Johnson was ineffective in failing to obtain and investigate the laboratory reports of the chemist in reference to the drugs that were confiscated from him. He submits that under the sentencing guidelines, "crack" refers only to a particular subset of cocaine base and because the Government has not proved that the cocaine base involved was "crack" as defined by the Sentencing Guidelines, the Court should have made its calculations as if the drugs were cocaine powder. Webster argues that Johnson was ineffective because he allowed the drugs to be deemed "crack" cocaine.

-2-

Webster also contends that his guilty plea was involuntarily made, that he did not understand the nature of the charges and the consequences of the plea. He alleges that Attorney Johnson misinformed him as to the maximum amount of jail time he could receive and that Attorney Chambers, during his representation of Webster, told him that he would receive no more than fifteen years in custody because the guidelines were only advisory and judges had discretion in their sentencing. Webster alleges that only after accepting the plea did he discover he would most likely receive a 262 month sentence.

Finally, Webster alleges that Attorney Johnson was ineffective in allowing him to be sentenced as a career offender, based on his second degree misdemeanor assault conviction under Maryland state law, which he says should not have qualified as a "crime of violence" under § 4B1.2 of the Sentencing Guidelines.

The Government maintains that Webster's counsel did in fact study the chemist's report and cannot be faulted for failing to set forth arguments that had already rejected by the Fourth Circuit. The Government submits that the clear nature of the plea agreement and Webster's oral confirmation and acceptance of its terms at the plea hearing precludes his argument of "unlawful" inducement. The Government disputes that defense counsel "allowed" Webster to be sentenced as a career offender.

### III.

Claims of ineffective assistance of counsel are governed by the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that an individual claiming ineffective assistance demonstrate (1) "that counsel's performance was deficient," and; (2) "that the deficient performance prejudiced the defense." *Id.* at 687. Representation is deficient if it "falls below an objective standard of reasonableness." *Id.* at 690. A showing of prejudice requires "that counsel's errors were so serious as to deprive the defendant of a fair trial whose

-3-

result is reliable," and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 690-94. Put differently, "[t]he benchmark of an ineffective assistance claim must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.* at 686. For counsel's performance to be deficient, it must be shown that his performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Id.* at 687. The standard of review for assessing such competence "must be highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of ineffective assistance of counsel claims." *Id.* at 669.

## IV.

### A.

In every respect, Webster's claim of ineffective assistance fails as a matter of fact.

He alleges that counsel failed to obtain and investigate the laboratory reports of the chemists in reference to the drugs seized, then to dispute the classification. But a copy of the chemist's report was in fact sent to defense counsel during discovery. This report clearly distinguished between the amounts seized of cocaine powder, cocaine base and mixture of cocaine base and cocaine hydrochloride (or cocaine powder). Moreover, it was stipulated in the plea agreement and at the plea hearing that the confiscated drugs included cocaine base.

Beyond that, counsel can hardly be faulted for declining to set forth an argument already rejected by the Fourth Circuit. The Fourth Circuit has not adopted the holdings of other circuits that require that the Government bear the burden of proof at sentencing to show the controlled substance at issue is "crack" cocaine base rather than another form of cocaine base. *See United*

*States v. Steadman*, 198 F. Supp. 2d 730, 734 (E.D. Va. 2002).

Webster has also failed to show any prejudice. His claim is purely speculative. Notably, Webster does not assert that the drugs involved were anything but crack cocaine; he merely faults his attorney for failing to obtain the necessary information to question the drug type. Had Webster claimed that the drugs at issue consisted of something other than crack cocaine, he would have had the burden of proof to establish this factor. *See United States v. Davenport*, 884 F.2d 121 (4th Cir. 1989). Such attempt would almost certainly have failed, given that the analysis by the Government's chemist clearly established that the drugs involved included crack cocaine.

**B.**

Webster next claims that he was unlawfully induced into pleading guilty, but the record shows otherwise. He was advised of the maximum sentence he faced in the written plea agreement and in the oral summary of the agreement and during the colloquy with the Court at the plea hearing. Webster acknowledged in writing and orally confirmed at the plea hearing that he understood the maximum sentence he faced. He cannot now be heard to claim that he was somehow misinformed about the maximum penalty he faced, particularly when he did not in fact receive the maximum sentence permissible, i.e. life imprisonment.

**C.**

Webster's final allegation of ineffective assistance of counsel is counsel's alleged failure to argue against his sentencing as a career offender. First, of course the predicate crime of violence for this classification – second degree assault under Maryland law – has clearly been recognized by the Fourth Circuit. *See United States v. Simms*, 441 F.3d 313 (4th Cir. 2006). It makes little sense, then, to argue that defense counsel "allowed" Webster to be sentenced as a career offender. Attorney Johnson objected to the Presentence Report containing the career

offender calculation argued this issue at sentencing, and even appealed the issue to the Fourth

Circuit. Counsel diligently and competently explored all legal avenues for challenging

Webster's career offender status. This claim is also baseless.

## V.

Webster has filed a Motion for Default Judgment arguing that, because the Government

failed to respond to his 2255 petition both before the initial 60 day deadline and the second

August 29, 2007 deadline, default judgment should be granted in his favor pursuant to Fed. R.

Civ. P. 55(a). This Motion fails as a matter of law and fact.

Fed. R. Civ. P. 55(d) holds that "[a] default judgment may be entered against the United

States . . . only if the claimant establishes a claim or right to relief by evidence that satisfies the

court." The Government complied with the Court's order in filing its response to his 2255

Motion, docketed as entry #34, on August 28, 2007, before the Court's deadline. Thus, the

Government has pled and defended its position in this matter and is not in default.

In any case, because Webster's underlying habeas claims are meritless, he would not

have supplied the requisite satisfactory evidence to the Court even if the Government had not

responded in a timely fashion.

## VI.

For the foregoing reasons, the Court **DENIES** Webster's Motion to Vacate, Set Aside or

Correct Sentence and Motion for Default Judgment.

A separate order will ISSUE.

**PETER J. MESSITTE**
**August 5, 2008**                    **UNITED STATES DISTRICT JUDGE**

-6-